**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant,**

v.

**FOND du LAC HEAVY EQUIPMENT AND CONSTRUCTION CO., INC., and Fond du Lac Band of Lake Superior Chippewa, Appellees.**

No. 91–3561.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1992.

Decided Feb. 19, 1993.

Rehearing and Rehearing En Banc Denied April 6, 1993.

Robert J. Gregory, Washington, DC, argued (Donald R. Livington, Gwendolyn Young Reams, Lorraine C. David and Robert J. Gregory, on the brief), for appellant.

Dennis Peterson, Cloquet, MN, for appellees.

Before WOLLMAN and HANSEN, Circuit Judges, and ROY,* Senior District Judge.

HANSEN, Circuit Judge.

The Equal Employment Opportunity Commission (EEOC) brought a discrimination claim under the Age Discrimination in

* The HONORABLE ELSIJANE TRIMBLE ROY, Senior United States District Judge for the Western District of Arkansas, sitting by designation.

Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, against Fond du Lac Heavy Equipment and Construction Company and Fond du Lac Band of Lake Superior Chippewa. Fond du Lac Band of Lake Superior Chippewa is a federally recognized Indian tribe that chartered and wholly owns the equipment and construction company. The company was located on the reservation and occasionally did work off the reservation land.

The suit was brought on behalf of Marvin Pellerin, a member of the tribe, who was allegedly denied employment by the company because of his age. The district court[1] adopted the reasoning in *EEOC v. Cherokee Nation*, 871 F.2d 937 (10th Cir. 1989), which held that the ADEA does not apply to Indian tribes, and dismissed the case. The EEOC appeals.

■ Indian tribes possess the " 'inherent powers of a limited sovereignty which has never been extinguished.' " *United States v. Wheeler*, 435 U.S. 313, 322, 98 S.Ct. 1079, 1085, 55 L.Ed.2d 303 (1978) (quoting F. Cohen, Handbook of Federal Indian Law 122 (1945)). "Although no longer 'possessed of the full attributes of sovereignty,' they remain a 'separate people, with the power of regulating their internal and social relations.' " *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55, 98 S.Ct. 1670, 1675, 56 L.Ed.2d 106 (1978) (citations omitted). "[H]owever, Congress has plenary authority to limit, modify or eliminate the powers of local self-government which the tribes otherwise possess." *Id.* at 56, 98 S.Ct. at 1676 (citations omitted). The question presented in this case is whether Congress did so when enacting the ADEA.

■ The Supreme Court has stated that "general acts of Congress apply to Indians as well as to all others in the absence of a clear expression to the contrary." *Federal Power Commission v. Tuscarora Indian Nation*, 362 U.S. 99, 120, 80 S.Ct. 543, 555, 4 L.Ed.2d 584 (1960). This general rule in *Tuscarora*, however, does not apply when the interest sought to be affected is a spe-

cific right reserved to the Indians. *United States v. Winnebago Tribe of Nebraska*, 542 F.2d 1002, 1005 (8th Cir.1976). Specific Indian rights will not be deemed to have been abrogated or limited absent a "clear and plain" congressional intent. *United States v. Dion*, 476 U.S. 734, 738, 106 S.Ct. 2216, 2219, 90 L.Ed.2d 767 (1986) (citations omitted); *Winnebago Tribe*, 542 F.2d at 1005 (citations omitted). A clear and plain intent may be demonstrated by an "express declaration" in the statute, by the "legislative history," and by "surrounding circumstances." *Dion*, 476 U.S. at 739, 106 S.Ct. at 2220.

■ Although the specific Indian right involved usually is based upon a treaty, such rights may also be based upon statutes, executive agreements, and federal common law. *See Dion*, 476 U.S. at 745 n. 8, 106 S.Ct. at 2223 n. 8 ("Indian reservations created by statute, agreement, or executive order normally carry with them the same implicit hunting rights as those created by treaty.") (citations omitted); *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 141, 102 S.Ct. 894, 903, 71 L.Ed.2d 21 (1982) ("Tribe's authority to tax non-Indians who conduct business on the reservation … is an inherent power necessary to tribal self-government and territorial management."); *Santa Clara Pueblo*, 436 U.S. at 55–56, 98 S.Ct. at 1675 (Indian tribes have the right to regulate their internal and social relations, to make their own substantive law in internal matters, and to enforce that law in their own forum) (citations omitted). As this court has previously stated, "areas traditionally left to tribal self-government, those most often the subject of treaties, have enjoyed an exception from the general rule that congressional enactments, in terms applying to all persons, includes Indians and their property interests." *United States v. White*, 508 F.2d 453, 455 (8th Cir.1974) (footnotes omitted).

■ Both parties acknowledge that Fond du Lac Band of Lake Superior Chippewa is

---

**1.** The Honorable Paul A. Magnuson, District Judge for the District of Minnesota.

a federally recognized Indian tribe.[2] Inherent in the tribe's quasi-sovereignty is the tribe's power to "make their own substantive law in internal matters and to enforce that law in their own forums." *Santa Clara Pueblo*, 436 U.S. at 55–56, 98 S.Ct. at 1675 (citations omitted). Accordingly, the Band has the implicit right to self-governance.

■ The facts in this case reveal that this dispute involves a strictly internal matter. The dispute is between an Indian applicant and an Indian tribal employer. The Indian applicant is a member of the tribe, and the business is located on the reservation. Subjecting such an employment relationship between the tribal member and his tribe to federal control and supervision dilutes the sovereignty of the tribe. The consideration of a tribe member's age by a tribal employer should be allowed to be restricted (or not restricted) by the tribe in accordance with its culture and traditions. Likewise, disputes regarding this issue should be allowed to be resolved internally within the tribe. Federal regulation of the tribal employer's consideration of age in determining whether to hire the member of the tribe to work at the business located on the reservation interferes with an intramural matter that has traditionally been left to the tribe's self-government.[3]

Because the tribe's specific right of self-government would be affected, the general rule of applicability does not apply. *Accord Cherokee Nation*, 871 F.2d at 938 ("ADEA is not applicable because its enforcement would directly interfere with the Cherokee Nation's treaty-protected right of self-government").[4] *See also Nero v. Cherokee Nation of Oklahoma*, 892 F.2d 1457, 1463 (10th Cir.1989) (plaintiffs could not assert claims under 42 U.S.C. §§ 1981 and 2000d because they would affect the tribe's right to self-governance in a purely internal matter); *Donovan v. Navajo Forest Products Indus.*, 692 F.2d 709, 712 (10th Cir.1982) (OSHA held inapplicable to tribe in part because enforcement "would dilute the principles of tribal sovereignty and self-government recognized in the treaty"); *but contra Smart v. State Farm Ins.*, 868 F.2d 929, 935 (7th Cir.1989) (the "argument that ERISA will interfere with the tribe's right of self-government is overbroad"); *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1116 (9th Cir.1985) (right of self-government is too broad to defeat applicability of OSHA). Therefore, we find that the ADEA, as a statute of general applicability, does not apply to the Band absent a clear and plain congressional intent.

■ In determining whether such clear and plain intent exists, we are guided by *United States v. Dion*, 476 U.S. 734, 106 S.Ct. 2216, 90 L.Ed.2d 767 (1986).

> Explicit statement by Congress is preferable for the purpose of ensuring legislative accountability for the abrogation of treaty rights. We have not rigidly interpreted that preference, however, as a per se rule; where the evidence of congressional intent to abrogate is sufficiently compelling, "the weight of authority indicates that such an intent can also be found by a reviewing court from clear and reliable evidence in the legislative

---

**2.** The Fond du Lac Band of Lake Superior Chippewa entered into a treaty with the United States in 1854 in which the United States promised to "set apart" land for the Band. *See* addendum to appellant's brief, at 5 (Treaty, Art. 2(4)).

**3.** *See Santa Clara Pueblo*, 436 U.S. at 59, 98 S.Ct. at 1677 ("Even in matters involving *commercial* and domestic relations, we have recognized that 'subject[ing] a dispute arising on the reservation among reservation Indians'" to a forum other than their own may undermine the authority of the tribal court and " 'infringe on the right of the Indians to govern themselves.'") (emphasis added and citations omitted); *But contra Dono-*

*van v. Coeur d'Alene Tribal Farm,* 751 F.2d 1113, 1116 (9th Cir.1985) (self-government exception is limited to purely intramural matters such as conditions of tribal membership, inheritance rules, and domestic relations).

**4.** We reject EEOC's argument that *Cherokee Nation* is distinguishable because it was based on a treaty right of self-governance. "The identical right should not have a different effect because it arises from general treaty language rather than recognized, inherent sovereign rights." *United States Dep't of Labor v. Occupational Safety & Health Review Comm'n,* 935 F.2d 182, 186 (9th Cir.1991).

history of a statute." What is essential is clear evidence that Congress actually considered the conflict between its intended action on the one hand and Indian treaty rights on the other, and chose to resolve that conflict by abrogating the treaty.

*Id.* at 739–40, 106 S.Ct. at 2220 (citations omitted). The language in the ADEA does not expressly refer to Indians. Therefore, the EEOC must rely upon the legislative history in asserting its position that the ADEA applies to the Fond du Lac Band. The legislative history for the Age Discrimination in Employment Act of 1967 contains no reference regarding its applicability to Indian tribes. Under the guidance in *Dion,* neither the statute nor the statute's legislative history indicates a clear and plain congressional intent to apply the ADEA to Indian tribes.

The EEOC argues, however, that a clear and plain congressional intent to apply the ADEA to Indian tribes should be inferred from the statute because ADEA was modeled after Title VII, and Title VII expressly excludes Indian tribes from its scope. The relevant provision in the two statutes is the definition of "employer." The originally enacted language of the ADEA included the following definition:

> The term "employer" means a person engaged in an industry affecting commerce who has twenty-five or more employees ...: Provided, That prior to June 30, 1968, employers having fewer than fifty employees shall not be considered employers. The term also means any agent of such person, but such term does not include the United States, a corporation wholly owned by the Government of the United States, or a State or political subdivision thereof.

Pub.L. No. 90–202, 81 Stat. 605 (1967) (codified at 29 U.S.C. § 630(b)). Title VII, as originally enacted, also includes a definition of "employer."

> The term "employer" means a person engaged in an industry affecting commerce who has twenty-five or more employees ... and any agent of such a person, but such term does not include

(1) the United States, a corporation wholly owned by the Government of the United States, *an Indian tribe,* or a State or political subdivision thereof, (2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of the Internal Revenue Code of 1954: Provided, That during the first year after the effective date prescribed in subsection (a) of section 716, persons having fewer than one hundred employees (and their agents) shall not be considered employers, and, during the second year after such date, persons having fewer than seventy-five employees (and their agents) shall not be considered employers, and, during the third year after such date, persons having fewer than fifty employees (and their agents) shall not be considered employers: Provided further, That it shall be the policy of the United States to insure equal employment opportunities for Federal employees without discrimination because of race, color, religion, sex or national origin and the President shall utilize his existing authority to effectuate this policy.

Pub.L. No. 88–352, 78 Stat. 253 (1964) (codified at 42 U.S.C. § 2000e) (emphasis added).

Although the two provisions are generally similar, differences do exist. Under ordinary canons of construction, the omission of the phrase "an Indian tribe" in the ADEA in comparison with its inclusion in Title VII could be construed as indicating that Indian tribes were intended to be covered by the ADEA. The language quoted above in *United States v. Dion,* 476 U.S. 734, 739–40, 106 S.Ct. 2216, 2220, 90 L.Ed.2d 767 (1986), however, indicates that some affirmative evidence of congressional intent, either in the language of the statute or its legislative history, is required to find the requisite "clear and plain" intent to apply the statute to Indian tribes. Furthermore, ambiguities of congressional intent must be resolved in favor of the tribal sovereignty. *Cotton Petroleum Corp. v. New Mexico,* 490 U.S. 163, 178, 109 S.Ct. 1698, 1708, 104 L.Ed.2d 209 (1989) ("ambiguities in federal law are, as a rule, resolved in favor of tribal independence"). Because of the special rules of construction

that apply in a case such as this, we do not find that a clear and plain intention of Congress should be extrapolated from the omission of the phrase "an Indian tribe" from the definition of "employer" in the ADEA. *Accord Cherokee Nation*, 871 F.2d at 939

Therefore, we find that the ADEA does not apply to the narrow facts of this case which involve a member of the tribe, the tribe as an employer, and on the reservation employment, and we affirm the district court's dismissal of the case.

WOLLMAN, Judge, dissenting.

I find persuasive the EEOC's argument that the ADEA's legislative history supplies the clear and plain congressional intent that the ADEA should apply to Indian tribes. As set forth in Judge Tacha's dissent in *EEOC v. Cherokee Nation*, 871 F.2d 937, 939 (10th Cir.1989) (Tacha, J., dissenting), there is a good deal of evidence that Congress was aware of Title VII's provisions when it promulgated the ADEA. *Id.* at 941 n. 2. By specifically excluding Indian tribes from the definition of "employer" in Title VII and by omitting an exclusion for Indian tribes in the ADEA, Congress made clear its intent that Indian tribes come with the ADEA's reach. As summarized by Judge Tacha:

> The definition of employer in the ADEA was patterned after the definition of employer in Title VII, with the important exception that Title VII explicitly excludes Indian tribes from the definition. The omission of the Indian tribe exclusion in the ADEA, in light of the clear congressional reliance on Title VII's provisions ... evidences congressional intent on the face of the statute to include Indian tribes in the definition of employer for the purposes of the ADEA. Congress has carefully enumerated the exceptions to ADEA coverage, and I find no basis to imply a further exception for Indian tribes.

*Id.* at 942 (footnote omitted).

Moreover, the reason for excluding Indian tribes from Title VII's coverage—to enable Indian tribes to give preference to Indians in tribal government employment (*see id.*, citing *Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974), and Senator Mundt's comments)—do not exist in the present case, at least on the basis of the record before us, for there is no evidence that Indian tribes have any long-standing cultural practices that favor the employment of younger rather than older members of the tribe (indeed, I do not understand the Fond du Lac Band's brief as making such an argument). In the absence of such a showing, I see the ADEA as posing no more of a threat to the sovereign prerogatives of tribal government, or to the control of that government over its internal affairs, than it posed to the separate, independent existence and sovereignty of state governments. *See EEOC v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983). Rather, I would analogize the impact of the ADEA upon tribal independence and sovereignty to that flowing from ERISA and OSHA, which, as the court's opinion points out, have been held applicable to Indian tribes in the face of arguments that those statutes would impermissibly infringe upon the right of tribal self-government. *Smart v. State Farm Ins. Co.*, 868 F.2d 929 (7th Cir.1989); *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113 (9th Cir.1985).

I would reverse the judgment of dismissal and remand the case with directions to reinstate the complaint.