**Leonard PRESCOTT, F. William Johnson, and Peter Riverso, Plaintiffs,**

**v.**

**LITTLE SIX, INC., in its capacity as plan administrator for the Little Six, Inc. Executive 457 Plan, the Little Six, Inc. Supplemental Retirement Plan, the Little Six, Inc. Life Insurance Plan, the Little Six, Inc. Separation Pay Plan and the Little Six, Inc. Retention Plan; the Little Six, Inc. Ex-**

ecutive 457 Plan; the Little Six, Inc. Supplemental Retirement Plan; the Little Six, Inc. Life Insurance Plan; the Little Six, Inc. Separation Pay Plan; and the Little Six, Inc. Retention Plan, Defendants.

No. CIV. 02–04741(DSD/SRN).

United States District Court, D. Minnesota.

Sept. 30, 2003.

Douglas A. Kelley, Steven E. Wolter and Kelley Law Office, Minneapolis, MN, counsel for plaintiffs.

Steven F. Olson, BlueDog, Olson & Small, Bloomington, MN, counsel for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court upon defendants' objections to the report and recommendation of United States Magistrate Judge Susan R. Nelson, dated August 4, 2003. Defendants object to the report and recommendation on three grounds: (1) that the court lacks subject matter jurisdiction over plaintiffs' claims because the Employee Retirement Income Security Act of 1974 ("ERISA") does not apply to defendants, (2) that the court must defer to the determination of the Shakopee Mdewakanton Sioux (Dakota) Community Court that no ERISA plan exists, and (3) that defendants possess tribal sovereign immunity which has not been waived. After *de novo* review, the court adopts the magistrate judge's report and recommendation in part.

## A. Application of ERISA to Little Six, Inc. ("LSI")

The court agrees with the magistrate judge's determination that ERISA applies to defendants. As the magistrate judge correctly explained, LSI is subject to ERISA unless an exception to the *Tuscarora* rule applies. *See Fed. Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99, 80 S.Ct. 543, 4 L.Ed.2d 584 (1960); *EEOC v. Fond du Lac Heavy Equip. & Constr. Co.*, 986 F.2d 246, 248 (8th Cir. 1993). After due consideration, the magistrate judge determined that no exception to the *Tuscarora* rule applies. (R & R at 17.)

Defendants argue that the *Tuscarora* rule does not apply because LSI engages in "governmental activity." (Defs.' Obj. at 3.) Defendants' argument is, at first, puzzling because there exists no blanket exception to the *Tuscarora* rule for tribal entities that engage in governmental activity. Defendants apparently intend their discussion of "governmental activity" to serve as shorthand for the proposition that, in this circuit, "areas traditionally left to tribal self-government," such as matters which are "strictly internal," "have enjoyed an exception from the general rule that congressional enactments, in terms applying to all persons, includes Indians and

their property interests." *Fond du Lac*, 986 F.2d at 248.

Thus construed, defendants' argument fails. *Fond du Lac* involved an age discrimination claim brought by a tribal member against a tribal entity. 986 F.2d at 249. The case recognizes that federal courts should not intrude into disputes that are wholly internal to the tribe. *See id.* at 249. For the reasons stated in her report and recommendation, Magistrate Judge Nelson correctly concluded that LSI's alleged conduct has extramural effects and that defendants have otherwise failed to show how application of ERISA to the facts of this case would affect the Community's inherent right of self-government. Further, as a matter of common sense, it is unlikely that the "culture and traditions" of the Dakota nation have as much to say on the subject of employee benefit plans, an innovation of the last century, as they would regarding the appropriate age for a tribal member to retire from work. *See id.* at 249. Defendants' objection therefore fails.[1]

**B.** *Status vel non* **of the ERISA plans**

■ Defendants next object that this court must defer to the ruling of the Court of Appeals for the Shakopee Mdewakanton Sioux Community that no ERISA plans

exist. The magistrate judge correctly determined that, because tribal court jurisdiction is a matter of federal law, a federal district court has subject matter jurisdiction to review whether a tribal court's exercise of its jurisdiction was proper. *See Duncan Energy Co. v. Three Affiliated Tribes of Fort Berthold Reservation*, 27 F.3d 1294, 1300 (8th Cir.1994). The magistrate judge also rightly concluded that the question of the tribal court's jurisdiction, as well as other questions of federal law decided by the tribal court, are reviewed by the district court *de novo*. *See id.* at 1300. However, the magistrate judge stopped short of determining whether the tribal court was correct in its conclusion that no ERISA plan was formed, deciding it would be inappropriate to decide that question without the benefit of the full record before the tribal court. After *de novo* review, the court respectfully disagrees with the magistrate judge's conclusion, and holds, for reasons set forth below, that it is proper to dispose of the question of the *status vel non* of the ERISA plans at this time.

A review of the procedural history of this matter is in order. Plaintiffs first brought their ERISA claims before this court in the mid–1990s. That round of

---

1. Defendants complain that the magistrate judge dismissed in a single footnote their argument that Opinion Letter 81–3 of the Pension Benefit Guaranty Corporation ("PBGC"), issued March 4, 1981, compels the conclusion that ERISA does not apply to LSI. Defendants argued before Magistrate Judge Nelson that PBGC opinion letters are entitled to *Chevron* deference (Defs.' Mem. in Supp. of Mot. to Dismiss at 8). *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (where statute is silent or ambiguous, agency interpretation controls if "permissible").

PBGC disagrees. In Opinion Letter 87–7, issued three years after *Chevron* was decided, PBGC acknowledges that its opinion letters "are not binding on the public or on the

courts" and that they are, in any event, entitled only to *Skidmore* deference. Priv. Ltr. Rul. 87–7 (Pension Benefit Guar. Corp. Jul. 21, 1987) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944) (weight of agency authority "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control")). Even were this not so, the extramural effects cited by the magistrate judge are more than sufficient to remove this case from the factual situation presented in Opinion Letter 81–3. *See* Priv. Ltr. Rul. 81–3 (Pension Benefit Guar. Corp. Mar. 4, 1981).

federal litigation was terminated when Judge Kyle ordered the case dismissed under the doctrine of exhaustion of tribal remedies. *See Prescott v. Little Six, Inc.*, 897 F.Supp. 1217 (D.Minn.1995). Judge Kyle assumed, but did not decide, that the Mdewakanton Sioux tribal courts had jurisdiction to consider whether the ERISA plans under which plaintiffs claimed relief existed. *See id.* at 1224 ("The tribal court presumptively has jurisdiction to determine whether LSI's plans are valid ERISA plans."); *see also Int'l Ass'n of Entrepreneurs of Am. v. Angoff*, 58 F.3d 1266, 1269 (8th Cir.1995) ("ERISA nowhere makes federal courts the exclusive forum for deciding the ERISA *status vel non* of a plan"), *quoted in Prescott*, 897 F.Supp. at 1222.

Plaintiffs did as directed by Judge Kyle and brought their dispute before the court of the Shakopee Mdewakanton Sioux Community. (Compl.Ex. 6.) After a hearing, that court reached several conclusions. First, the court implicitly determined that it did have jurisdiction to determine whether the putative plans exist. (Compl.Ex. 6.) Second, the court found that the plans exist. (Compl. Ex. 6 at 5–6.) Third, the court held that the plans were governed by ERISA and that, therefore, the court was deprived of jurisdiction to continue the matter further. (Compl. Ex. 6 at 6.)

Defendants then took their appeal to the Court of Appeals for the Shakopee Mdewakanton Sioux Community. (Compl.Ex. 7.) That court reversed and held that, as a matter of tribal corporate law, the plans could not exist without evidence that they had been formally approved by LSI's board of directors in conformance with LSI's articles of incorporation. (Compl. Ex. 7 at 6–8.) Apparently, no further appeal was available to the plaintiffs under the laws of the Community. Plaintiffs, having thus exhausted their tribal reme-

dies, now return to federal court to seek review of the tribal court's rulings.

■ Once tribal remedies have been exhausted, the first question for the district court is whether the tribal court's exercise of its jurisdiction was proper. *See Duncan Energy*, 27 F.3d at 1300. Accordingly, after *de novo* review, the court affirms that which Judge Kyle presumed and the tribal court held: the tribal court had jurisdiction to consider the *status vel non* of the ERISA plans. "Although federal courts have exclusive jurisdiction to award equitable relief under 29 U.S.C. § 1132(a)(3), federal courts do not have exclusive jurisdiction to determine whether an ERISA plan exists." *Prescott*, 897 F.Supp. at 1222. To date, Congress has displayed no intent to remove that question from tribal jurisdiction, and, "because the tribe retains all inherent attributes of sovereignty that have not been divested by the federal government, the proper inference from silence is that the sovereign power remains intact." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 18, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987).

Defendants, recognizing that our jurisdiction over this matter evaporates once the plans are deemed not to exist for purposes of ERISA, would end the inquiry there. Defendants quote *Iowa Mutual* for the proposition that, "[u]nless a federal court determines that the Tribal Court lacked jurisdiction . . ., proper deference to the Tribal Court system precludes relitigation of issues raised in the Tribal Court." (Defs.' Obj. at 2.)

■ Defendants are partially correct. As the Eighth Circuit Court of Appeals explained in *Duncan Energy*, *Iowa Mutual* requires that federal courts review tribal courts' findings of fact "under a deferential, clearly erroneous standard." *Duncan Energy*, 27 F.3d at 1300. Likewise, the federal court must also accord deference to

determinations of tribal law. *See id.* at 1300. A tribal court's determinations of federal law, however, are accorded no deference and are reviewed by the district court *de novo. See id.* at 1300.

As correctly observed by the magistrate judge, the question of the *status vel non* of an ERISA plan is a mixed question of law and fact in this circuit. *Kulinski v. Medtronic Bio–Medicus, Inc.,* 21 F.3d 254, 256 (8th Cir.1994). The law which is to be applied to the question is federal law. *See id.* at 256–57. The appropriate standard is supplied by the ERISA statute interpreted in accordance with relevant precedent of the Supreme Court of the United States and this circuit. *See id.* at 256–57.

Having determined that the question of the *status vel non* of the ERISA plans is reviewable because it involves application of federal law, the court must determine whether it is appropriate to conduct that review at this stage of the litigation. The question of the existence of the plans under ERISA merges with the question of the court's jurisdiction over the subject matter of this action. *See Kulinski,* 21 F.3d at 256. If there is insufficient evidence to establish the existence of at least one plan, the court must dismiss the case. *See id.* at 256.

"[B]ecause jurisdiction is a threshold question, judicial economy demands that the issue be decided at the outset rather than deferring it until trial...." *Osborn v. United States,* 918 F.2d 724, 729 (8th Cir. 1990). The only exception to this principle is triggered when "the jurisdictional issue is 'so bound up with the merits that a full trial on the merits may be necessary to resolve that issue.'" *Id.* at 730 (quoting *Crawford v. United States,* 796 F.2d 924 (7th Cir.1986)). The magistrate judge was of the opinion that this narrow exception should apply to delay review of the tribal court's decision until the full transcript of those proceedings is before the court. (R

& R at 36.) After considering what should be the appropriate scope of that review in the post-exhaustion posture of this case, however, the court respectfully disagrees.

One of the purposes of the doctrine of exhaustion of tribal remedies is to further "the Federal Government's longstanding policy of encouraging tribal self-government." *Iowa Mut.,* 480 U.S. at 14, 107 S.Ct. 971. Toward that end, it is incumbent upon the federal courts to show proper respect for the findings of tribal courts on matters of fact and the conclusions of those courts on questions of tribal law. *See Duncan Energy,* 27 F.3d at 1300. Plaintiffs have placed the opinions of both the tribal trial and appellate courts before this court. (Compl. Exs. 6 & 7.)

The tribal trial court conducted a three-day evidentiary hearing. (Compl. Ex. 6 at 3.) From the face of its opinion and order, it is apparent that the court credited certain evidence, did not credit other evidence, and made findings of fact regarding the reality and operation of the plans. (Compl.Ex. 6.) On review, the Court of Appeals did not challenge the validity of the trial court's factual findings. (Compl.Ex. 7.) Rather, it ruled that the trial court had erred as a matter of tribal law and that no ERISA plans existed because there was no evidence that the plans had been adopted by the LSI board in conformance with the technical requirements of LSI's articles of incorporation. (Compl. Ex. 7 at 6–8.) The court observed that to hold that the plans existed in the absence of such formalities "would be to ignore the carefully crafted body of corporate law laid out in [the] Community's Corporation Ordinance and in LSI's Articles of Incorporation." (Compl. Ex. 7 at 6.)

█ In so holding, the appellate court erred as a matter of federal law. As previously discussed, the standard for the ex-

istence of an ERISA plan is supplied by federal, not tribal, law. *See Kulinski,* 21 F.3d at 256–57. "Whether an ERISA plan exists ... may be determined by whether the employer requires 'an ongoing administrative program to meet [its] obligation.'" *Eide v. Grey Fox Technical Services Corp.,* 329 F.3d 600, 605 (8th Cir. 2003). An ongoing administrative program "is necessary when 'to determine the employees' eligibility for and level of benefits [the employer] must analyze each employee's particular circumstances in light of the appropriate criteria.'" *Id.* at 605 (quoting *Kulinski,* 21 F.3d at 257).

In this case, the tribal trial court found that LSI actually assembled such an administrative program. The court determined that the evidence showed "that until January, 1995, LSI administered and either paid actual cash benefits, or credited cash amounts to deferred accounts, for various LSI employees under all five Plans." (Compl. Ex. 6 at 9.) The court also found that "[t]he evidence shows that each of the Plans included more beneficiaries than just the [plaintiffs]" and that LSI established and periodically transferred money into a trust in order to meet its continuing obligations to participants in the plans. (Compl. Ex. 6 at 9–10.) Assets from the trust were actually disbursed to satisfy claims under three of the five plans. (Compl. Ex. 6 at 10.) Finally, the court noted that the written material accompanying the plans indicated that LSI itself believed that the plans were subject to ERISA. (Compl. Ex. 6 at 10.)

Defendants have not suggested, either before the magistrate judge or in their objections to her report and recommendation, that the findings of the tribal trial court are unsound.[2] In the absence of such a claim, sound principles of comity caution the court against re-weighing the

evidence. *See Duncan Energy,* 27 F.3d at 1300 (federal court should not set aside factual findings of tribal court unless clearly erroneous). Therefore, the court finds that it would be fruitless to wait for the parties to deposit the full transcript. Applying the correct legal standard to the facts as found by the tribal court, the court holds that the each of the five plans exists and is governed by the dictates of ERISA.

**C. Sovereign Immunity**

■ The court agrees with and adopts the magistrate judge's discussion of sovereign immunity and conclusion that LSI possesses no such immunity from suit with respect to claims brought by plaintiff Prescott because Prescott is a Community member. Article 3.1 of LSI's articles of incorporation states that LSI's immunities "shall not extend to actions against [LSI] by the Community or any voting member of the Community." (Aff. of Steven F. Olson Ex. B at 1). Regardless of whether that language is construed as a waiver of sovereign immunity or a limitation of the immunities conferred upon LSI by the Community, the magistrate judge correctly observed that the result is the same.

Defendants argue that Article 3.2 restores a portion of that sovereign immunity which was waived in Article 3.1. Specifically, defendants contend that, by reiterating that "[c]onsent shall not be required for an action commenced by a Member of the Corporation to enforce the provisions of [the articles of incorporation] or the Corporation Ordinance in the Tribal Court" (Aff. of Steven F. Olson Ex. B at 2), Article 3.2 cloaks LSI with immunity from suit by the Community or its members in every forum except the tribal court.

---

**2.** Indeed, defendants conceded before the tribal appellate court that "there is support in

the record for at least some of the Trial Court's conclusions." (Compl. Ex. 7 at 6.)

The language of Article 3.2 will not bear defendants' construction. The purpose of Article 3.2 is to grant LSI the power to waive that immunity which was conferred upon it in Article 3.1. The Community spoke clearly and unequivocally regarding the scope of LSI's sovereign immunity in Article 3.1. If the Community had wished to leave intact LSI's sovereign immunity from suits brought by its members in federal court, it could have amended Article 3.1 by inserting the words "in tribal court" between the words "actions" and "against," or by dealing separately with LSI's immunities as against individual members and LSI's immunities as against the community as a whole. For whatever reason, the community chose against limiting its members' litigation options. Therefore, the court holds that sovereign immunity provides defendants no defense with respect to plaintiff Prescott's claims.

■ Because the magistrate judge did not reach the question of the existence of the ERISA plans in her report and recommendation, she did not fully address the question whether defendants waived their immunity from suit in summary plan descriptions ("SPDs") which, as the tribal court found, LSI distributed to participants in the plans. (Compl. Ex. 6 at 10.) The magistrate judge did observe, however, "striking language" in some of the SPDs that weighed in favor of a finding of waiver. (R & R at 35.)

Defendants argue that the SPDs "are not legally operative documents" and therefore could not waive LSI's sovereign immunity. (Defs.' Obj. at 8.) That contention has no merit. "Recognizing that employee benefit plans are usually lengthy and highly technical documents, Congress required plan administrators to furnish SPDs to each plan participant and beneficiary." *Jensen v. SIPCO, Inc.,* 38 F.3d 945, 952 (8th Cir.1994); *see also* 29 U.S.C. § 1022(a). SPDs therefore facili-

tate "adequate disclosure to employees," which is "one of ERISA's major purposes." *Jensen,* 38 F.3d at 952. "Because of the importance of disclosure to [ERISA's] statutory regime," courts apply a rule of construction to SPDs under which "an SPD provision prevails if it conflicts with a provision of a plan." *Id.* at 952. It is, therefore, quite possible that language contained in an SPD could operate to effect a waiver of LSI's sovereign immunity.

■ In order for a waiver of tribal sovereign immunity to be effective, it must be clear and unequivocal. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). As the magistrate judge rightly observed, however, waiver does not require "the invocation of 'magic words' stating that the tribe hereby waives its sovereign immunity." *Rosebud Sioux Tribe v. Val–U Constr. Co. of South Dakota,* 50 F.3d 560, 563 (8th Cir.1995). With those principles in mind, the court examines the language of the SPDs. Three of the SPDs, those applicable to the LSI Life Insurance Plan, the LSI Separation Pay Plan and the LSI Supplemental Retirement Plan, each contain the following statements:

1. "[I]f you request materials from the Plan and do not receive them within 30 days, you may file suit in a federal court." (Compl. Ex. 1 at 3; Compl. Ex. 2 at 4; Compl. Ex. 3 at 5.)

2. "If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court." (Compl. Ex. 1 at 3; Compl. Ex. 2 at 4; Compl. Ex. 3 at 5.)

3. "If it should happen that plan fiduciaries misuse the Plan's money or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor or you may file suit in a federal court." (Compl. Ex.

1 at 4; Compl. Ex. 2 at 4; Compl. Ex. 3 at 5.)

The phrase "you may file suit in a federal court" leaves little open for interpretation. It is clear, it is unequivocal, and it has legal effect. Therefore, the court holds that LSI has waived its sovereign immunity with respect to the LSI Life Insurance Plan, the LSI Separation Pay Plan and the LSI Supplemental Retirement Plan as to the claims of all plaintiffs.

Waiver, however, may not be implied. *Santa Clara Pueblo,* 436 U.S. at 58, 98 S.Ct. 1670; *Dillon v. Yankton Sioux Tribe Hous. Auth.,* 144 F.3d 581, 583 (8th Cir. 1998). With respect to the LSI Retention Plan and the LSI Executive 457 Plan, plaintiffs have not cited, nor can the court find, any language in the SPDs that could be construed as a waiver of LSI's sovereign immunity. (Compl. Exs. 4 & 5.) The court therefore holds that LSI is immune from those claims of plaintiffs Johnson and Riverso which arise under the LSI Retention Plan or the LSI Executive 457 Plan.

Accordingly, after conducting a *de novo* review of the file and record, the court adopts those parts of the magistrate judge's report and recommendation that are consistent with this order.

Therefore, **IT IS HEREBY ORDERED** that:

1. Defendants' motion to dismiss [Docket No. 2] is granted with respect to the claims of plaintiffs F. William Johnson and Peter Riverso against defendants Little Six, Inc., Retention Plan and Little Six, Inc., Executive 457 Plan.

2. Defendants' motion to dismiss is granted with respect to the claims of plaintiffs Johnson and Riverso against defendant Little Six, Inc., in its capacity as plan administrator for the Little Six, Inc., Retention Plan and in its capacity as plan administrator for the Little Six, Inc., Executive 457 Plan.

3. Defendants' motion to dismiss is denied with respect to all claims of plaintiff Leonard Prescott.

4. Defendants' motion to dismiss is denied with respect to the claims of plaintiffs Johnson and Riverso against defendants Little Six, Inc., Life Insurance Plan, Little Six, Inc., Separation Pay Plan and Little Six, Inc., Supplemental Retirement Plan.

5. Defendants' motion to dismiss is denied with respect to the claims of plaintiffs Johnson and Riverso against defendant Little Six, Inc., in its capacity as plan administrator for the Little Six, Inc., Life Insurance Plan, in its capacity as plan administrator for the Little Six, Inc., Separation Pay Plan and in its capacity as plan administrator for the Little Six, Inc., Supplemental Retirement Plan.