**Kurt SNYDER, a married man, individually, and on behalf of all other similarly situated employees of the Navajo Nation; Division of Navajo Public Safety; Darrell Boye, a married man, individually; Larry Etsitty, Sr., a single man, individually; Sarah Habaadih, a single woman, individually; Jones R. Begay, a married man, individually; Johnny Peshlakai, a married man, individually; Ronald Platerio, a married man, individually; Rex Butler, a married man, individually; Tyrone benally, a single man, individually; Charlene Bahe, a single woman, individually; Kenny James, a married man, individually; Rosalyn Benally, a single woman, individually; Leroy Butler, a married man, individually; Lucy Lane, a married woman, individually; Dale Dennison, a married man, individually; Randall Tomasyo; a married man, individually; and on behalf of all other similarly situated employees of the Navajo Nation, Plaintiffs–Appellants,**

v.

**The NAVAJO NATION, Defendant–Appellee.**

Kurt Snyder, a married man, individually, and on behalf of all other similarly situated employees of the Navajo Nation; Division of Navajo Public Safe-

ty; Darrell Boye, a married man, individually; Larry Etsitty, Sr., a single man, individually; Sarah Habaadih, a single woman, individually; Jones R. Begay, a married man, individually; Johnny Peshlakai, a married man, individually; Ronald Platerio, a married man, individually; Rex Butler, a married man, individually; Tyrone Benally, a single man, individually; Charlene Bahe, a single woman, individually; Kenny James, a married man, individually; Rosalyn Benally, a single woman, individually; Leroy Butler, a married man, individually; Lucy Lane, a married woman, individually; Dale Dennison, a married man, individually; Randall Tomasyo; a married man, individually; and on behalf of all other similarly situated employees of the Navajo Nation; Antonio Cooke; Evelyn Smiley; Mary Fernando; Katie Belone; Louis Anderson; Esther Charley; Louis St. Germaine; Ernest D. Yazzie; Salvantis Begay; Rosina Ford; Otis Desiderio, Robert H. James; Frederick L. Price; Raymond K. Barlow; Henry C. Platerio, Jr.; Fayetta Dale; Wallace Billie; Kara Tilden; Bernadine Dobson; Raymond Butler, Jr.; Division of Navajo Public Safety, Plaintiffs–Appellants,

v.

The Navajo Nation; United States of America, Defendants–Appellees.

Nos. 02–16632, 03–15395.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 2004.

Filed June 10, 2004.

Amended Sept. 2, 2004.

Edward D. Fitzhugh, Law Offices of Edward D. Fitzhugh, Tempe, AZ, for the plaintiffs-appellants.

Dana L. Bobroff, The Navajo Nation Department of Justice, Window Rock, AZ, and Catherine Y. Hancock, Assistant Attorney General, Department of Justice, Washington, DC, for the defendants-appellees.

Before SCHROEDER, Chief Judge, TALLMAN, and CALLAHAN, Circuit Judges.

## ORDER AMENDING OPINION AND DENYING REHEARING AND AMENDED OPINION

### ORDER

The Opinion filed June 10, 2004, is amended as follows:

Slip Opinion page 7727, lines 17–18, delete ", and more narrow than," and lines 30–31, delete "This case is easier, because" and insert "Here,"

With the above amendments, the panel has voted to deny the petition for panel rehearing and to deny the petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R.App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc are denied.

### OPINION

SCHROEDER, Chief Judge:

Appellants in these consolidated appeals are law enforcement officers of the Navajo Nation Division of Public Safety ("DPS") who filed actions against both the Navajo Nation and the United States claiming violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219. The district court dismissed the claims against the Navajo Nation, holding that law enforcement was an intramural matter within the meaning of *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113 (9th Cir.1985), and that the FLSA therefore did not apply to plaintiff law enforcement officers. The court also dismissed the claims against the United States. The tribal law enforcement officers appeal both dismissals. We affirm.

The FLSA establishes various employee protections and employment standards including premium pay for overtime work. Appellants claim the tribe and United States are in violation of this act because Appellants are regularly required to work overtime and the tribe makes only delayed, sporadic and partial payments for overtime. Appellants also assert that they should receive the same compensation as law enforcement officers employed by the Bureau of Indian Affairs ("BIA") who do similar work.

**Claims Against the Tribe**

■ The FLSA is a statute of general applicability. *Rutherford Food Corp. v.*

*McComb*, 331 U.S. 722, 727, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947). Such generally applicable statutes typically apply to Indian tribes. *Fed. Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99, 116, 80 S.Ct. 543, 4 L.Ed.2d 584 (1960). There is an exemption, however, where the law would interfere with tribal self-government. The exemption protects "exclusive rights of self-governance in purely intramural matters." *Coeur d'Alene Tribal Farm*, 751 F.2d at 1116; *EEOC v. Karuk Tribe Housing Auth.*, 260 F.3d 1071, 1078 (9th Cir. 2001) (hereinafter *"Karuk"*); *See also EEOC v. Fond du Lac Heavy Equipment and Construction Co., Inc.*, 986 F.2d 246, 249–51 (8th Cir.1993) (holding that the ADEA was not applicable because the tribe's right of self-government would be affected in the intramural matter of on reservation tribal employment); *Nero v. Cherokee Nation of Okla.*, 892 F.2d 1457, 1463 (10th Cir.1989) (holding that race discrimination statutes did not apply to a tribe's designation of tribal membership criteria).

In *Coeur d'Alene Tribal Farm*, we explained that the tribal self-government exception applied to intramural matters and we specifically mentioned, as examples, conditions of tribal membership, inheritance rules, and domestic relations. 751 F.2d at 1116. In *Karuk*, we followed *Coeur d'Alene Tribal Farm* and held that the employment of a tribal member, by the tribe's housing authority, on the reservation was an intramural matter and that federal age discrimination statutes did not apply. 260 F.3d at 1079–80. While we have not cabined the intramural exception to those listed in *Coeur d'Alene Tribal Farm*, we have been careful to allow such exemptions only in those rare circumstances where the immediate ramifications of the conduct are felt primarily within the reservation by members of the tribe and where self-government is clearly implicated.

In *NLRB v. Chapa De Indian Health Program, Inc.*, 316 F.3d 995 (9th Cir.2003) (hereinafter *"Chapa De"*), we considered whether the National Labor Relations Act applied to tribes and tribal organizations. *Id.* at 998. We determined that a financially independent, nonprofit tribal organization, which contracted to provide services to the tribe as well as others, and operated outside a reservation, was not exempt. *Id.* at 1000. *Chapa De* recognized that despite the relationship between self-government and health services, the commercial nature of the labor relations involved left the activity outside the ambit of the intramural matters exception. *Id.* at 999–1000. There, as have other circuits, we were careful to distinguish between what is a governmental function and what is primarily a commercial one. *Id.; Reich v. Mashantucket Sand & Gravel*, 95 F.3d 174, 180–81 (2d Cir.1996).

◼ In this case we are concerned with employees hired to enforce the law. The Navajo Nation's DPS maintains law and order within the reservation and this is a traditional governmental function. The FLSA contains an express exemption for state and local law-enforcement officers. 29 U.S.C. §§ 207(k), 207(*o*). Tribal law enforcement clearly is a part of tribal government and is for that reason an appropriate activity to exempt as intramural. *See Reich v. Great Lakes Indian Fish and Wildlife Comm'n*, 4 F.3d 490, 492–94 (7th Cir.1993) (noting that state and local police have no federal entitlement to time and a half for overtime and that Congressional failure to include tribal or Indian police in the exemption was likely a mere oversight).

Appellants argue that these officers' activities are not intramural because they are not performed exclusively on the res-

ervation. Appellants claim that incidental contacts and travel off the reservation preclude application of the intramural affairs exception. They rely, for example, on officers' visits with law enforcement agencies in the states the reservation borders.

There is no question that tribal officers travel off the reservation to assist other agencies engaging in investigation of crimes that affect the reservation and Navajo citizens. The FBI, United States Attorney's Offices, and federal court-houses to which DPS officers travel are necessarily located off the reservation.

When officers travel to provide information or to testify in such locations, however, they do so because of a crime that occurred on the reservation or directly affected the interests of the tribal community. Thus, such services performed off-reservation nevertheless relate primarily to tribal self-government and remain part of exempt intramural activities. Such travel does not relate to any non-government purpose. Nor does it provide primary benefits to persons with no interest or stake in tribal government. *See, e.g., Chapa De*, 316 F.3d at 999–1000. Indeed, none of the officers' official travel is aimed at benefiting any private organization or nonmember. Employed by an arm of the tribal government, officers serve the tribe's governmental need for law enforcement to promote the welfare of the tribe and its members.

Our decision is entirely consistent with the only other circuit opinion to consider the applicability of the FLSA to tribal law enforcement. *See Great Lakes Indian Fish and Wildlife Comm'n*, 4 F.3d at 492–495. In that case, the Seventh Circuit held that the FLSA did not apply to law enforcement activities of wildlife officers employed by a consortium of thirteen Indian tribes to enforce usufructuary treaty rights relating to property located outside the reservation. *Id.* The officers in that case worked almost exclusively off the reservation. *Id.* at 494. Even so, the court reasoned that the investigation and enforcement of tribal property rights off the reservation was at least equal to if not more important to the Indians than the exercise of their right to occupancy within the reservation. *Id.* at 495. Here, we deal only with incidental off-reservation travel directly related to the investigation of possible criminal conduct on the reservation. If the off-reservation enforcement of tribal rights in *Great Lakes* did not bring the officers within the purview of the FLSA, then the incidental off-reservation travel by these plaintiffs does not either.

Appellants also point out that at least some of the plaintiffs are not Navajo, suggesting this may be a material fact. Yet the non-Navajo officers represent fewer than four percent of those employed by the Navajo DPS. The rest are tribal members. More important, all the officers work on the reservation to serve the interests of the tribe and reservation governance. We therefore affirm the district court's determination that the FLSA does not apply to the Navajo Nation's DPS and its decision to dismiss the tribe.

### Claims Against the United States

■ The claims against the United States are in reality claims against the tribe, which is appellants' true employer. Appellants have joined the United States only through a tenuous link. It involves the tribe's self-determination contract and a statutory provision that limits the tort liability of the tribe for employees' torts.

The Indian Self–Determination and Education Assistance Act of 1975 ("IS-DEAA"), Public Law 93–638, authorizes federal agencies to contract with Indian tribes to provide services on the reservation. 25 U.S.C. §§ 450–450n. The pur-

pose of the ISDEAA is to increase tribal participation in the management of programs and activities on the reservation. Congress wanted to limit the liability of tribes that agreed to these arrangements. Congress therefore provided that the United States would subject itself to suit under the Federal Tort Claims Act ("FTCA") for torts of tribal employees hired and acting pursuant to such self-determination contracts under the ISDEAA. Pub.L. No. 101–512, Title III, § 314, 104 Stat.1959 (codified at 25 U.S.C. § 450f note) (hereinafter § 314).

The Navajo Nation contracted with the BIA to provide law enforcement on the Navajo Reservation under a self-determination contract, or so-called "638 Contract." Thus, the United States arguably agreed to assume liability under the FTCA for tribal officers' torts. Appellants, however, do not assert a tort claim against the United States under the FTCA. The ISDEAA would not appear to apply.

Appellants seize upon a provision in the ISDEAA, that states that Indian contractors are deemed to be a part of the BIA and that any civil action "shall be deemed to be an action against the United States...." § 314. Appellants assert that the provision means they are employees of the BIA for all purposes and can properly bring their FLSA suit against the United States under 29 U.S.C. § 216(b). Congress, however, did not intend section 314 to provide a remedy against the United States in civil actions unrelated to the FTCA. *See generally Demontiney v. United States,* 255 F.3d 801, 807(9th Cir.2001); *FGS Constructors, Inc. v. Carlow,* 64 F.3d 1230, 1234 (8th Cir.1995); *Comes Flying v. United States,* 830 F.Supp. 529, 530–31 (D.S.D.1993); General Accounting Office Report No. 00–169, Federal Tort Claims Act: Issues Affecting Coverage for Tribal Self–Determination Contracts 6, 16 (July 2000) (GA Report). The United States is therefore an inappropriate party to this action. The district court reached the correct result when it dismissed the claims against the United States.

AFFIRMED.