# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 03-3702

_____

| | | |
|---|---|---|
| Leonard F. Prescott, F. William Johnson, Peter Riverso, | * * * | |
| Appellees, | * * | |
| v. | * * | |
| Little Six, Inc., in its capacity as plan administrator for the Little Six, Inc., Executive 457 Plan, the Little Six, Inc., Supplemental Retirement Plan, the Little Six, Inc., Life Insurance Plan, the Little Six, Inc., Separation Pay Plan and the Little Six, Inc., Retention Plan; The Little Six, Inc., Supplemental Retirement Plan; The Little Six, Inc., Life Insurance Plan; The Little Six, Inc., Separation Pay Plan; The Little Six, Inc., Retention Plan; The Little Six, Inc., Executive 457 Plan, | * * * * * * * * * * * * * * | Appeal from the United States District Court for the District of Minnesota. |
| Appellants. | * | |

_____

Submitted: June 16, 2004
Filed: October 21, 2004

_____

Before WOLLMAN, HEANEY, and BOWMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Little Six, Inc. ("LSI"), a corporation organized pursuant to the laws of the Shakopee Mdewakanton Sioux (Dakota) Community Indian tribe ("the Tribe"), appeals the decision of the District Court denying LSI's motion to dismiss claims brought by former executive employees of LSI for payment of benefits under employee benefit plans purportedly created by LSI. Because we determine that the District Court erred in not giving proper deference to a tribal court finding that the plans were not authorized under tribal law, we reverse and remand the case to the District Court and direct that the lawsuit be dismissed.

The Tribe created LSI in 1992 as a tribal corporation responsible for operating casinos owned by the Tribe pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701–2721 (2000). The Plaintiffs, Leonard Prescott, F. William Johnson, and Peter Riverso, are former employees of LSI who served as chief executive officer, chief operations officer, and senior vice president, respectively. In late 1992 and early 1993, the Plaintiffs drafted certain employee benefit plans to be made available to executive-level employees of LSI (including the Plaintiffs). The LSI board of directors discussed the draft benefit plans at a number of meetings but never formally approved the plans. In 1994, following a tribal election, the LSI board of directors was replaced in its entirety. Shortly thereafter, the new LSI board of directors passed a resolution specifically refusing to adopt the draft benefit plans.

The Plaintiffs, nevertheless, sought payment of benefits under the draft plans from trusts that had been created in association with the draft plans. LSI took the position that both the draft plans and the trusts were not validly created and that the trust funds should be returned to LSI. In the face of these conflicting claims, the trustees of the trust filed an interpleader complaint in the Court of the Shakopee Mdewakanton Sioux (Dakota) Community, seeking the court's guidance about the legal status of the draft plans and the appropriate distribution of assets in the trust.

While the tribal court action was pending, the Plaintiffs brought suit in federal district court under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1053 (2000) ("ERISA"), seeking benefits under the plans and equitable relief. The district court dismissed the action, holding that the Plaintiffs were required to exhaust their tribal remedies before the district court could exercise jurisdiction. Prescott v. Little Six, Inc., 897 F. Supp. 1217, 1222 (D. Minn. 1995). The Plaintiffs then intervened in the ongoing tribal court action. The tribal trial court concluded that, though there was no written record memorializing approval of the plans by the LSI board of directors, the "actual reality" was that the plans had been approved and were valid. The tribal trial court further determined that the plans were governed by ERISA and that it had no jurisdiction over the Plaintiffs' ERISA claims. LSI appealed the tribal trial court decision to the Shakopee Mdewakanton Court of Appeals.

The tribal court of appeals reversed the tribal trial court, ruling that the plans were never formally adopted under the corporate laws of the Tribe. Because the plans would increase officer compensation, the LSI Articles of Incorporation[1] required that the plans be formally adopted by the LSI board of directors to become effective. As the plans were never adopted by the board, no plans were created. Finding that nonexistent plans cannot impose liability on LSI under either ERISA or tribal law, the tribal court of appeals dismissed the Plaintiffs' claims.

The Plaintiffs then filed the instant action against LSI, alleging that the plans had been adopted by the LSI board of directors (and therefore "existed") and that the plans were governed by ERISA. LSI filed a motion to dismiss on three alternative grounds: (1) that LSI possesses tribal sovereign immunity from suit, which LSI did not waive; (2) that the federal court must defer to the tribal appeals court's

_____

[1]The LSI Articles of Incorporation are incorporated into the Shakopee Mdewakanton Sioux Community Amended Corporation Ordinance.

determination that no ERISA plans were created; and (3) that the federal court lacks subject matter jurisdiction because ERISA does not apply to LSI. The District Court rejected each of these arguments and denied LSI's motion to dismiss. This appeal, in which LSI essentially makes the same arguments in support of reversing the District Court's denial of dismissal, followed.

The denial of a motion to dismiss is not generally a final order subject to immediate appeal. See 28 U.S.C. § 1291 (2000). In this case, however, we have jurisdiction under the collateral order doctrine, which permits an interlocutory appeal from a district court's denial of sovereign immunity. See Moreno v. Small Bus. Admin., 877 F.2d 715, 716 (8th Cir. 1989) (ruling that "a rejection of a claim for absolute or qualified immunity is immediately appealable"); see also Osage Tribal Council v. Department of Labor, 187 F.3d 1174, 1179 (10th Cir. 1999) (ruling that "the denial of tribal immunity is an immediately appealable collateral order"), cert. denied, 530 U.S. 1229 (2000); Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians, 63 F.3d 1030, 1050 (11th Cir. 1995) (ruling that the collateral order doctrine applies to denial of tribal sovereign immunity). In addition, we have pendent appellate jurisdiction to decide "closely related" issues of law, i.e., claims that are "inextricably intertwined with" or "necessary to ensure meaningful review of" the sovereign immunity issue. Kincade v. City of Blue Springs, Missouri, 64 F.3d 389, 394 (8th Cir. 1995) (internal quotations and citations omitted), cert. denied, 517 U.S. 1166 (1996).

Our jurisdiction to address LSI's sovereign immunity claim is without doubt. We also conclude that we have jurisdiction to address LSI's assertion that the District Court erred in not deferring to the tribal appeals court's determination that no benefit plans were created. This argument is "inextricably intertwined with" the issue of whether LSI waived sovereign immunity through language in the draft benefit plans, as asserted by Plaintiffs Riverso and Johnson. If the draft benefit plans were never approved, it follows that LSI did not waive sovereign immunity in the plans. Thus,

it is necessary for us to address LSI's argument that the tribal appeals court's order was entitled to deference before we can determine whether there is a need to review the sovereign immunity issue.[2]  Because we agree with LSI that the District Court erred in not deferring to the tribal appeals court's determination that no benefit plans were created, we need not address LSI's assertion that LSI is immune from suit nor LSI's remaining assertions on appeal.

We review a district court's decision to deny or grant a motion to dismiss under a de novo standard of review.  See Harris v. Epoch Group, 357 F.3d 822, 824–25 (8th Cir. 2004).

The Supreme Court has repeatedly recognized Congress's commitment to a "policy of supporting tribal self-government and self-determination."  National Farmers Union Ins. Cos. v. Crow Tribe, 471 U.S. 845, 856 (1985); see also Iowa

---

[2]This ruling, while based on the pendent appellate jurisdiction standards set forth in Kincade, is consistent with our pre-Kincade cases holding that questions of law which will dispose of the necessity to address an assertion of immunity are "closely related issues of law" that are properly before the Court on interlocutory appeal. See Moreno, 877 F.2d at 716–17 ("Resolution of the constitutional claim and the common-law tort claims will dispose of the immunity questions, and we may therefore address them."); Drake v. Scott, 812 F.2d 395, 398–99 (8th Cir. 1987) (holding that the claim that the plaintiff owned no property interest was subject to pendent appellate jurisdiction because, if true, "the question of qualified immunity would drop out of the case [and] would never have to be reached"), cert. denied, 484 U.S. 965 (1987).

Moreover, this ruling is supported by the law governing immunity claims in the analogous context of civil rights actions filed against government officials.  The Supreme Court has ruled that courts must consider the "threshold question" of whether the official violated a constitutional right before addressing the issue of qualified immunity.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  Id.

Mutual Ins. Co. v. LaPlante, 480 U.S. 9, 14 (1986) (citing cases). Consistent with this policy, the Supreme Court has determined that "tribal courts are best qualified to interpret and apply tribal law." Iowa Mutual, 480 U.S. at 16. Thus, in this Circuit, we "defer to the tribal courts' interpretation" of tribal law. City of Timber Lake v. Cheyenne River Sioux Tribe, 10 F.3d 554, 559 (8th Cir. 1993) (deferring to tribal court's decision that the tribal constitution gave the tribal court personal jurisdiction over non-Indians), cert. denied, 512 U.S. 1236 (1994); see also Duncan Energy v. Three Affiliated Tribes, 27 F.3d 1294, 1300 (8th Cir. 1994) ("The Tribal Court's determinations of federal law should be reviewed *de novo* while determinations of Tribal law should be accorded more deference."), cert. denied, 513 U.S. 1103 (1995). Similarly, a tribal court's findings of fact are reviewed under a "deferential, clearly erroneous standard." Duncan Energy, 27 F.3d at 1300. It is only when the tribal court applies federal law that the tribal court's determinations are accorded no deference and are reviewed by the district court de novo.[3] Id.

The Plaintiffs argued, and the District Court agreed, that the legal status of the draft benefit plans is governed by federal law. The District Court thus accorded no deference to the decision of the tribal appeals court and instead applied a de novo standard of review. The District Court determined that the tribal court erred in concluding that no plans existed under which LSI could be subject to ERISA liability. In reaching the conclusion that the legal status of the plans is a question of federal law subject to de novo review, the District Court relied on our decision in Kulinski v. Medtronic Bio-Medicus, Inc., 21 F.3d 254, 256 (8th Cir. 1994). See Prescott v. Little Six, Inc., 284 F. Supp. 2d at 1229. The District Court's application of Kulinski was erroneous.

---

[3]Although a federal court may also perform a de novo review of a tribal court's determination of its own jurisdiction, Duncan Energy, 27 F.3d at 1300, the District Court here explicitly recognized that "the tribal court had jurisdiction to consider the *status vel non* of the ERISA plans." Prescott v. Little Six, Inc., 284 F. Supp. 2d 1224, 1228 (D. Minn. 2003).

In Kulinski, the issue of whether or not an employer entered into an agreement obligating the employer to pay compensation benefits was not before the court on appeal. It is true that Kulinski's employer argued in the district court that an agreement entitling Kulinski to compensation benefits was invalid because it was not approved by the employer's board of directors (an argument that the district court rejected). See Kulinski, 21 F.3d at 255–56. On appeal, however, this Court did not address the validity and existence of the benefits agreement, but only whether the district court properly deemed the agreement an ERISA "plan." Id. at 258. It was this second issue of whether or not a valid agreement for benefits compensation is a "plan" subject to ERISA to which this Court applied federal law. After discussing caselaw from our sister circuits, we ruled that an ERISA "plan" only exists if the benefits arrangement requires the establishment of a separate, ongoing administrative scheme to administer the promised benefits. Id. at 257–58.

In this action, of course, the courts were not required to reach this subsequent issue of whether a valid benefits arrangement became a "plan" subject to ERISA. Rather, the initial, and dispositive, issue addressed was whether a valid and enforceable benefits arrangement existed. The tribal appeals court properly determined that the legal status of the LSI draft benefit plans was a matter governed by tribal law. LSI is a branch of the sovereign tribal government, created under Article V of the Constitution of the Shakopee Mdewakanton Sioux Community of Minnesota. As such, LSI is subject to the Tribe's laws governing corporations as set out in the Shakopee Mdewakanton Sioux Community Amended Corporation Ordinance ("Corporation Ordinance"). The Corporation Ordinance permits tribal corporations to delineate operating rules in Articles of Incorporation. Corporation Ordinance, § 4.012. As recognized by the tribal appeals court, LSI's Articles of Incorporation specifically address the manner in which officer compensation may be fixed. Restated Articles of Incorporation of Little Six, Inc., § 8.6.

Interpreting these tribal laws, the tribal appeals court determined that benefit plans that have the effect of increasing LSI officer compensation must be adopted by the LSI board of directors. In re: Trust Under Little Six, Inc. Retirement Plans, No. 024-00, *6 (SMS(D)C Ct. App. Oct. 26, 2001). As discussed above, we must defer to this interpretation of tribal law. Turning to the facts of the case, the tribal appeals court then found that "there is no evidence in the record that the LSI Board adopted these plans or the trust in conformance with Community law." Id. at *5. To the contrary, in early 1995, the new LSI board of directors "passed a resolution . . . specifically stating that it had never adopted or approved any of the benefit plans involved in this dispute." Id. at *4. Accordingly, the tribal appeals court found that benefit plans were never created and thus ERISA liability could not arise. After reviewing the record before us, we cannot say that the tribal appeals court committed clear error in making these findings. We therefore defer to the tribal appeals court's determination that, as a matter of tribal law, no benefit arrangement was created.

Because as a matter of tribal law no benefit plan exists, there is nothing here to which ERISA could apply. For the reasons stated, we reverse the order of the District Court and remand the case with instructions that it be dismissed.

_____